IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUE POLK, INDIVIDUALLY, AND AS ADMINISTRATRIX
OF THE ESTATE OF JERRY R. POLK, THE HEIRS
OF THE ESTATE OF JERRY R. POLK,
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES
OF JERRY R. POLK                                                                      PLAINTIFFS

vs.                                                         CIVIL ACTION NO. 1:18-cv-59 HSO-JCG

MAURICIO PERAZA, MNE FREIGHT, LLC,
and JOHN DOES 1-5                                                                     DEFENDANTS

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION TO
STRIKE AND EXCLUDE TESTIMONY OF BENJAMIN SMITH**

Defendants file this Response in Opposition to Motion to Strike and Exclude Testimony of Benjamin Smith and state:

1.  Plaintiffs filed their Complaint in this case seeking to recover alleged damages relating to an automobile accident that occurred on January 3, 2018, resulting in the death of Jerry Polk. Doc. #1-1 at 5. Polk was driving a GMC Yukon westbound on Highway 26, in Pearl River County, Mississippi, when it collided with an 18-wheeler driven by Mauricio Peraza.

2.  Following the collision, Peraza and witness, Cazz Holden, removed Polk from his vehicle. Polk's Yukon caught on fire shortly afterward and was substantially damaged.

3.  Plaintiffs filed suit less than three weeks after the accident. Defendants engaged Benjamin Smith as an expert accident reconstructionist to determine the cause of the accident. Defendants learned that Plaintiffs had engaged Brett Alexander as their accident reconstructionist.

1

4.     As part of the investigation, Smith sought to obtain a download of the airbag control module ("ACM" or "black box") data from Polk's Yukon. The data includes pertinent information routinely used by reconstructionists, such as accelerator percent, breaking percent, speed and other information about a vehicle immediately prior to an accident. This information is one of several tools that aid reconstructionists in determining the cause of motor vehicle accidents. ACM data is reliable data because it cannot be altered by the end user once is it recorded.

5.     Plaintiffs' expert, Alexander, obtained the ACM from Polk's vehicle. Alexander attempted to obtain data from the ACM, but the housing for the unit was damaged by the vehicle fire, preventing a direct download. Reconstructionists, technicians, mechanics or others usually obtain ACM data through an OBD-II Diagnostic Link Connector or other direct cable connection. See Exhibit "A," at 28 titled "Getting Data from Destroyed SDMs." ACM internal components are "quite durable," but the housing of the units often becomes damaged by fire, water or other through other mechanical damage, preventing a direct connection to the unit. *Id.*

6.     Alexander was unable to obtain any information from the ACM. Alexander testified in his deposition that he was unfamiliar with the process for obtaining data from an ACM when the housing is damaged. Exhibit "B" at 69. As a result, he provided the ACM to the Defendants' reconstructionist, Smith, by agreement of the parties. Notably, Plaintiffs' motion incorrectly argues Defendants performed "destructive testing" "without notice to Plaintiff's representatives." Doc. #151 at 2. This is wholly false, as Plaintiffs' expert, Alexander, had the ACM first, and he was unable to obtain any data from it. Alexander *himself* provided that ACM to Smith, knowing he was going to have the memory chip transferred to a surrogate unit so that the data could be downloaded. Exhibit "B" at 69; Exhibit "C," Smith Affidavit.

7.      Plaintiffs' seek to exclude Smith as an expert under *Daubert* because they disagree with his reliance upon the ACM data, which shows Polk was travelling 89 mph prior to the accident, twice the posted speed limit. Smith's opinions are not based solely on the ACM. Smith considered a plethora of facts and evidence. The weight and sufficiency of the evidence is not a *Daubert* issue, but is properly the subject of cross-examination.

8.      Smith is a highly qualified reconstructionist and crash data retrieval specialist. See Smith CV, Exhibit "D." Smith has over a decade of experience as an accident reconstructionist. He is the Technical Analyst and Managing Partner for Messerschmidt Safety Consultants. Smith is a certified accident reconstructionist and has knowledge, training and experience as a Crash Data Retrieval System Technician and as a Crash Data Retrieval System Operator / Data Analyst. See Exhibit "C." Smith states in his affidavit that he has a great deal of knowledge, training and experience in crash data systems, retrieval of the data, and interpretation of that data. He has written about crash data retrieval and made professional presentations in this area, including specifically heavily damaged vehicles. Smith has knowledge, training and experience in many different methods and procedures regarding crash data retrieval. Smith is familiar with the data retrieval procedure used on Polk's vehicle, and he confirms that it was retrieved in accordance with industry accepted procedures and protocols.

9.      Accident reconstructionists routinely relies upon ACM downloads obtained from a variety of sources, whether downloaded themselves, by opposing experts, mechanics or technicians. See Smith Affidavit, Exhibit "C." The mechanism of download is immaterial to the quality of the data, as it is not able to be altered. *Id; State v. Diaz*, 2017 WL 1017356, at *3 (N.M. App. 2017)(stating, "out-of-jurisdiction case law, at least to the extent our limited research

has revealed, is unanimous in accepting CDR or EDR or vehicular "black box" evidence as scientifically or technologically reliable").

10. Plaintiffs brief falsely argues numerous times that "Smith's opinions were based on the data obtained from the undisclosed individual…" "third party." Plaintiffs' Brief, Doc. #151 at 2. This is a self-defeating allegation because Plaintiffs' own motion includes the report of Shanon Burgess, employed by Smith's office, provided by the Defendants. See 151-2 at 2; Exhibit "E." Burgess is not some "unknown third-party," but is employed by Smith. Burgess has also been identified in written discovery. Exhibit "F." Burgess's report details at length how the ACM download data was obtained.

11. The process by which Polk's vehicle's ACM data was obtained is not novel by any means and has been used for over a decade. Exhibits "A" and "C." Polk's Yukon's ACM housing unit was damaged, preventing download cables from being plugged into it. The memory chip was removed and placed into a serviceable unit, where it was downloaded. This is no more complicated than taking a USB flash drive from one computer and placing it into another. *Id.* "Chip swapping" is a recognized industry accepted method of obtaining ACM data. *Id.* Numerous courts have held that ACM electric components are not "new or novel" technology because the "microprocessors that run them and record their data also run everyday appliances, such as computers and televisions." *Matos v. State*, 899 So. 2d 403, 407 (Fla. 4th Dist. App. 2005); *State v. Shabazz*, 946 A.2d 626, 633–34 (N.J. Super. Ct. 2005)(stating, "crash sensors such as the SDM had been in production in automobiles for over a decade, and that the microprocessors that run them and record their data also run everyday appliances, such as computers and televisions… '[i]f the scientific evidence is not 'novel,' then the *Frye* admissibility standard has been satisfied'"). See also *State v. Shabazz*, 946 A.2d at 634 (stating

"the process is simple" and finding ACM electrical components not a novel concept under "the *American Heritage Dictionary of the English Language* 898 (1975) definition of the word "novel").

12. Plaintiffs' motion goes to matters that are the subject of cross-examination, not *Daubert* type issues. Notably, Plaintiffs do not challenge Smith's qualifications as a reconstruction, the sufficiency of his designation and report, or the methodology of his reconstruction. Smith's opinions about the cause of the vehicle and Polk's speed are corroborated by numerous other pieces of evidence, including skid marks and the Yukon's damage. Plaintiffs' own expert, Alexander, admits that Polk was travelling greatly in excess of the speed limit and that the accident would not have happened if Polk was driving the speed limit.

13. Smith is familiar with both industry standards from obtaining ACM data, the process for memory chip placements, and the facts involving the retrieval of the data in this case. Smith confirms that everything was performed in accordance with industry accepted practices. Smith testified at length about the process his office uses in his deposition. See Exhibit "H" at 12-15.

14. The Court should deny Plaintiffs' motion because Smith is highly qualified and his opinions are relevant and reliable. Smith's opinions are validated by industry accepted practices and publications. Polk was travelling at nearly twice the posted speed limit at the time of the accident, and the jury should be informed about how his speed caused the accident. The Court should deny Plaintiffs' motion, or, alternatively, conduct a *Daubert* hearing to receive Smith's testimony and additional evidence regard his qualifications and the validity of his opinions.

15.     Defendants rely upon the arguments contained in their memorandum brief filed contemporaneously herewith and the following exhibits:

    Exhibit A – Getting Data from Destroyed SDMs;

    Exhibit B – Alexander Deposition;

    Exhibit C – Smith Affidavit;

    Exhibit D – Smith CV;

    Exhibit E – Shanon Burgess Report;

    Exhibit F – Third Supplemental Answers; and

    Exhibit G – Messerschmidt Summary and Analytical Report; and

    Exhibit H – Smith Deposition.

WHEREFORE, Defendants request this Court deny Plaintiff's Motion to Strike and Exclude Testimony of Benjamin Smith.

RESPECTFULLY SUBMITTED, this the 15th day of October, 2018.

                                        /s/ Lane Dossett
                                        L. CLARK HICKS, MSB NO. 8963
                                        R. LANE DOSSETT, MSB NO. 102927
                                        *Attorney for Defendants, Mauricio Peraza*
                                        *and MNE Freight, LLC*

HICKS LAW FIRM, PLLC
211 South 29th Avenue, Suite 201 (39401)
Post Office Box 18350
Hattiesburg, MS 39404-8350
Telephone:   601.544.6770
Facsimile:   601.544.6775
Email: clark@hicksattorneys.com
       lane@hicksattorneys.com

## CERTIFICATE OF SERVICE

I, undersigned counsel, do hereby certify that I have this day electronically filed the foregoing ***Response in Opposition to Motion to Strike and Exclude Testimony of Benjamin Smith*** with the Clerk of the Court using the ECF system, which sent notification of such filing to all registered users, including, the opposing parties' attorney.

THIS the 15th day of October, 2018.

/s/ Lane Dossett
L. CLARK HICKS, MSB NO. 8963
R. LANE DOSSETT, MSB NO. 102927
*Attorney for Defendants, Mauricio Peraza and MNE Freight, LLC*
