IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SUE POLK, INDIVIDUALLY, AND AS ADMINISTRATRIX
OF THE ESTATE OF JERRY R. POLK, THE HEIRS
OF THE ESTATE OF JERRY R. POLK,
AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES
OF JERRY R. POLK                                                      PLAINTIFFS

vs.                                              CIVIL ACTION NO. 1:18-cv-59 HSO-JCG

MAURICIO PERAZA, MNE FREIGHT, LLC,
and JOHN DOES 1-5                                                    DEFENDANTS

## AFFIDAVIT OF BEN SMITH

STATE OF MISSISSIPPI
COUNTY OF Forrest

    PERSONALLY APPEARED BEFORE ME Ben Smith, who after being duly sworn, testified as follows:

1. My name is Ben Smith, and I have personal knowledge of the facts and information contained in this affidavit.

2. I am a Technical Analyst and Managing Partner for Messerschmidt Safety Consultants. My CV has been previously provided.

3. I am a certified accident reconstructionist. As part of this position and in conjunction with this work, I have also received training as a Crash Data Retrieval System Technician and as a Crash Data Retrieval System Operator / Data Analyst.

4. I have a great deal of knowledge, training and experience in crash data (also known as ACM) systems, retrieval of the data, and in interpretation of that data. I have written about Crash Data retrieval and made professional presentations in this area, including


EXHIBIT C

specifically heavily damaged vehicles. I have been trained and have knowledge, training and experience in many different methods and procedures regarding crash data retrieval.

5. I am very familiar with the procedures used in this case for the retrieval of Jerry Polk's vehicle's crash data. The data was obtained by my office, reviewed by me, and was in accordance with industry accepted procedures and protocols. This process is not complicated and only involves moving the memory from a damaged unit to a serviceable unit.

6. I am familiar with the allegations made by the Plaintiffs in this case in their motion to exclude me. First, their allegation that I obtained the ACM system and did not inform them about "destructive" testing is false. I received the ACM system from Brett Alexander, Plaintiffs' accident reconstructionist, only after he determined that he was unable to obtain data from it. Brett was informed we were going to move the memory to a surrogate unit for downloading. All components have been preserved and are still available.

7. I am familiar with Plaintiffs' allegations that I did not personally inspect the Polk ACM unit. This is false. I did inspect the unit and determined that the data could not be obtained using cables and direct download.

8. I have provided an article demonstrating the industry practice of "chip swapping," which is where a memory chip from a damaged ACM is placed into a new serviceable unit and the data is obtained. This process has been used by accident reconstructionists for well over a decade and does not involve a novel or new concept. This process is no different than removing a USB flash drive from one computer and placing it into another.

9. Crash data from ACM systems is extremely reliable and is routinely relied upon by reconstructionists. The data and memory files cannot be altered by the end user, and once it is recorded to the memory it cannot be changed. If there were any issues with the memory of the

ACM in this case, no data would have been obtained. We would not have received errant, altered data.

10. I have evaluated that data retrieved from the Polk ACM and verified its accuracy with other accident-scene based evidence. There are a number of ways reconstructionists verify the consistency of ACM data, including other evidence related to speed and the circumstances of the accident. I have discovered no evidence which disputes the accuracy of the ACM data in this case. Objective external evidence and verification confirm that the ACM data in this case is extremely reliable and in accordance with industry customs and practices.

11. Plaintiffs' allegations regarding purported "anomalies" in the data are false. As an example, Plaintiffs claim that the CDR data is incorrect because witnesses testified that Polk was wearing his seatbelt at the time of the accident, but the data showed a different status. This is not uncommon, and the form CDR Report prepared by the manufacturer of the system clearly states that "If the vehicle's electrical system is compromised during a crash, the state of the Driver's Belt Switch Circuit may be reported other than the actual state."

12. I am familiar with the Plaintiffs' allegations that the data was obtained by some unknown third party. This is false. The data was obtained by my technician, Shannon Burgess, employed by my office. Plaintiffs are in receipt of his report relating his retrieval of the ACM data. Plaintiffs' counsel asked "gotcha" type questions during my deposition and now attempt to use them against me. As an example, he points out in his motion that he asked during the deposition about the manufacture of the ACM modules. I did not have that information in front of me at the time of my deposition because the manufacturer of the unit is not material to my opinions about the cause of this vehicle accident. However, this information is documented in our office files. It was manufactured by GM and is part number 12246820. We documented the

process very thoroughly, and even photographed the unopened boxes of the new units to demonstrate full chain of custody.

13. The process by which the ACM data was obtained was well documented by video and photographs. Those videos and photographs have been provided to the Plaintiffs. I have reviewed the retrieval process and confirm that it was done in accordance with standard practices.

14. Accident reconstructionists routinely rely upon ACM data obtained by a multitude of sources. The data is routinely obtained by opposing experts, field technicians, and vehicle mechanics. All sources are valid and reliable sources because the data cannot be altered. Reliance upon such data is no different than a physician relying upon an MRI taken by a technician.

15. I am familiar with the allegations in Plaintiffs' motion regarding the statements of Cazz Holden. Conflicting evidence is for the jury to decide. However, I have considered Holden's written statement and will consider his deposition once the transcript is prepared. I understand he testified that Polk was travelling approximate 35 mph. I agree with Brett Alexander that this testimony is not correct because it directly conflicts with the skid marks left by Polk's vehicle. If Polk had been travelling 35 mph, he would have stopped short of Peraza's vehicle and the accident would not have occurred. Conversely, the skid marks and amount of damage to the vehicles in this case verify the ACM data in this case, and are consistent with Polk travelling 89 mph prior to the collision.

Further, Affiant sayeth not.

This the 12th day of October, 2018.

_____
BEN SMITH

4

STATE OF MISSISSIPPI

COUNTY OF Lamar

 

PERSONALLY appeared before me, the undersigned authority in and for the state and county aforesaid, BEN SMITH, who after being duly sworn by me, stated under oath that the information in the above and foregoing AFFIDAVIT is true and correct to the best of his knowledge and belief.

SWORN TO AND SUBSCRIBED BEFORE ME on this the 12th day of October, 2018.

_R. Lane Dossett_

NOTARY PUBLIC

[Notary Seal: STATE OF MISSISSIPPI, NOTARY PUBLIC, ID # 93505, ROBERT LANE DOSSETT, Commission Expires April 18, 2021, LAMAR COUNTY]